JOHN DUCJACK, APPELLANT, v. NEW JERSEY ZINC COMPANY, INCORPORATED, RESPONDENT.

Submitted February 17, 1928—Decided May 14, 1928.

For the appellant, *Feder & Rinzler.*

For the respondent, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff was employed by the defendant company as a "mucker" in its zinc mine. The character of his employment required him to work in the mine at a depression of eight hundred feet, and while engaged in this employment he became afflicted with rheumatism, which he attributed to the wet and damp condition of the place where he was put at work, and as a result of the rheumatism, alleges he was compelled to quit his job in 1926.

He brought his action against the defendant company to recover compensation for the impairment of his health, which in his complaint, filed in the cause, he alleges he suffered, and was due to the fact that the defendant company, having knowledge of the dampness of the place where he worked, and of the danger to his health, nevertheless, "allowed and permitted him" to continue his work there, and thereby failed to exercise reasonable care to furnish him with a reasonably fit and safe place to work, and that the company also failed to furnish him with the proper appliances to protect himself from injury, and carelessly and negligently assured him, the plaintiff, that the condition of the place where he worked was harmless and impossible to cause any injury to his health.

From the record it appears that the plaintiff's complaint was amended so as to allege that he went to work for the zinc company in the year of 1921, instead of January, 1926; that the work of a "mucker" is to shovel the ore or pieces of rock into the race, a sort of a chute, and sometimes into the car.

The plaintiff testified that he was forty-seven years old at the time of the trial; that he went to work for the company in 1921; that the place where he did his work was dry; that after working there for a year or two, water dripped into the mine and gathered in several places; that he continued on with his work, and feeling pains in his shoulder and other parts of his body, spoke to the foreman regarding

it, and asked him what he thought was the cause of these pains, and whether he thought it was because of the water dripping into the mine and wetting him, and the foreman replied he didn't think it was; that he was subsequently furnished with a rubber coat, but this did not prevent the trickling of the water down his back; that he complained to the foreman again and told him he was still suffering from these pains, and when he asked the foreman whether or not it was due to the water he was told it was not, so he continued to work until he was compelled to quit on account of the rheumatism.

Since it appears that the trial judge granted the nonsuit on the sole ground that the dampness and wetness of the mine, and the conditions under which the plaintiff worked, were obvious risks, and the plaintiff, by continuing in the employment at the place where the work was to be performed, after the place became damp and wet, assumed the risks and therefore was debarred of a recovery, it becomes of no importance, as bearing upon the legal propriety of the nonsuit, that the rheumatism from which the plaintiff suffered was the result of the conditions under which he worked in the mine.

Although the plaintiff sets forth in his complaint that he was assured by the defendant company that the condition of which he complained was harmless, and that it was impossible to cause any injury to his health, there was no testimony adduced by the plaintiff to support that statement of alleged fact.

It is true that the plaintiff testified he complained to the foreman of the pain he was suffering and the foreman answered that "it will pass away," and at another time, when making the same complaint, it was suggested by the plaintiff that it might be from the water, the foreman said, "I don't think so," and "that it was nothing."

These statements are far from any assurance given by the defendant company that the place would be made safe to work in. The opinion of the foreman as to whether or not the dampness or wetness of the mine was the cause of the pain of which the plaintiff complained cannot be converted into an assurance that the place was safe, or would be made safe.

The question propounded by the plaintiff to the foreman was one to be properly addressed to a physician, and not to a layman, who was working in the mine, and apparently did not experience any evil results from the dampness or wetness of the place where he and his men were required to be, to do their work.

The rule is well settled in *Coyle* v. *Griffing Iron Co.,* 63 *N. J. L.* 609, where this court (at *p.* 612) says: "In other words, the servant assumes all the risks and perils usually incident to the employment and included in such risks and perils are those which it is a part of his duty to take knowledge of by observation." This case is cited in *Tompkins* v. *Marine Machine Co.,* 70 *Id.* 330, where this court (at *p.* 335) quotes and approves the above-stated legal proposition.

It is to be observed that the plaintiff entered upon his employment in 1921, and for the first year there was no water in the mine, but afterwards, from 1922 until 1926, there was a dripping of water into the mine, and the place where the plaintiff worked was wet, nevertheless, for a period of nearly four years after making his first complaint, and after he had suggested to the foreman that the pains he was suffering from might be due to the water, dripping and collecting in the mine, he still continued in the defendant's employ at the same work and at the same place.

The cases cited by counsel of appellant in support of his contention that the nonsuit was improperly ordered, relate to instances where the danger was latent. It goes without saying that there is no analogy between a case of a latent danger lurking in a mine from gases or other noxious or hurtful causes of which a plaintiff had no notice or warning, and the situation which is presented here under the testimony in the cause.

The judgment of nonsuit is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 16.

*For reversal*—None.